UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARY LEE MOORE & MARCUS MOORE                                         PLAINTIFFS

V.                                                  CIVIL ACTION NO. 3:25-CV-500-DPJ-ASH

HINDS COUNTY CHANCERY COURT
ADMINISTRATION & CT CORPORATION                                       DEFENDANTS

ORDER

This case is before the Court on Defendant CT Corporation's Motion to Dismiss [16] under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants the motion. The Court also finds that Plaintiffs' four motions for reconsideration [19, 20, 21, 22] should be denied. The remaining motions are taken under advisement.

I.    Background

The allegations against the Defendants in this pro se case are unclear. Broadly speaking, mother and son Plaintiffs Mary and Marcus Moore allege widespread public corruption in the Hinds County legal system. The facts trace back to 1989, when Marcus Moore slipped and fell in a grocery store and suffered a head injury. *See* Attach. [1-2] at 1.[1] Since then, the Moores have made repeated efforts, through several attorneys, to obtain insurance payouts before various courts.[2] *See id.* at 1, 6. The Moores' corruption allegations seem to stem from these proceedings

---

[1] This attachment is a 13-page letter the Moores sent to Former United States Attorney General Jeff Sessions in 2017.

[2] *See, e.g.*, *Moore v. Ace Insured/Chubb of Ins. Cos., et al.*, No. 3:24-CV-254-HTW-ASH (S.D. Miss. 2024) (dismissed for failure to timely serve defendants, failure to respond to show-cause order, and failure to request more time to do so).

and another proceeding regarding Mary Moore's status as her son's conservator.[3]  *See id.* at 3. They claim to have made past complaints to Former United States Attorney General Jeff Sessions, President Donald Trump, Congressman Bennie Thompson, and the "Public Corruption/Civil Right[s] Program FBI Headquarter[s]." Attach. [1-1] at 1.

On July 9, 2025, the Moores sued "Hinds County Chancery Court Administration" (HCCCA) and CT Corporation alleging that they violated at least five federal statutes. Compl. [1] at 3. They assert "issues concerning how the Legal System in Hinds County Mississippi, is Corrupt" and claim that there are "Judges who are committing malicious fraud, Misconduct and corrupting the whole legal process." Attach. [1-1] at 1 (unaltered). The Moores also say they have been "stalked," that many attempts have been made on their lives, and that they suffer "Post dramatic stress." *Id.* at 2 (unaltered). But they don't say that these Defendants committed those offenses. They conclude instead that HCCCA and CT Corporation are "in a conspiracy against [Plaintiffs] for their own personal gain." *Id.* at 3. The Moores seek $100 million in damages. *Id.*

After filing their lawsuit, the Moores did not initially docket any indication that they had perfected service on HCCCA or that they had served CT Corporation with a copy of the Complaint. That led to two orders and four of the now-pending motions.

On October 30, 2025, United States Magistrate Judge Andrew S. Harris properly issued an order directing the Moores to show cause, on or before November 13, 2025, "why the claims against the Hinds County Chancery Court Administration should not be dismissed without prejudice under Rule 4(m)." Order [12] at 1; *see* Fed. R. Civ. P. 4(m) (providing "90 days after

---

[3] *See Mary Moore, Conservator of the Person and Est. of Marcus Moore v. Roberts Co., Inc. F/K/A R&M Foods, Inc.*, No. 25CI1-08-CV-00644-WLK (Miss., Cir. Ct. 2014).

the complaint is filed" for service of process). In response, the Moores filed two motions [19, 21] seemingly seeking reconsideration or responding to the show-cause order.

Also on October 30, 2025, the Court denied the Moores' motion for default judgment [11]. *See* Order [13]. That led to two motions seeking reconsideration of that order. *See* Pls.' Mots. [20, 22]. Finally, on November 3, 2025, CT Corporation moved to dismiss [16], and the Moores never responded. The Court will start with CT Corporation's motion.

II.     CT Corporation Motion to Dismiss

    A.     Standard

When deciding a Rule 12(b)(6) motion to dismiss, the "[C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (per curium) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). But the Court will not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Watkins v. Allstate Prop. & Cas. Ins. Co.*, 90 F.4th 814, 817 (5th Cir. 2024) (quoting *King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022)). "Conclusory" means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." *Conclusory*, Black's Law Dictionary (11th ed. 2019), *quoted in Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the

necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

The Moores are proceeding pro se. "It is well-established that 'pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.'" *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981)). But even with pro se pleadings, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice." *Id.* (quoting *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

B.     Analysis

CT Corporation says the Moores' Complaint "fails to assert any valid claims" against it. Def.'s Mem. [17] at 4. The Court agrees.

The Moores utilized a form complaint for civil cases and included their factual allegations in a three-page attachment. *See* Attach. [1-1]. There, they assert many far-reaching claims, but none seem to factually include CT Corporation. The first time they mention CT Corporation is when they claim that their process server in a now-dismissed 2024 suit tried to personally serve a defendant, and someone named "Mark at the front desk stated that all services have to go to CT. Corp." *Id.* at 2; *see also* Attach. [1-3] at 3 (screenshot of email conversation about attempt to serve defendant in 2024 lawsuit). They then describe CT Corporation as "a leading registered agent service that provides legal and compliance solutions for business across the United States." Attach. [1-1] at 2. As CT Corporation states, this paragraph "fail[s] to assert a single claim of wrongdoing" against it. Def.'s Mem. [17] at 3.

The only other time the Moores mention CT Corporation comes at the end of their attachment under a header for "Relief." Attach. [1-1] at 3. The Moores allege there that both

4

Defendants are "in a conspiracy against I (Marcus Moore) and I (Mary Lee Moore) for their own personal gain." *Id.* But they provide no factual support for this legal conclusion, and legal conclusions don't count when trying to plead a plausible claim. *Watkins*, 90 F.4th at 817. In any event, nothing in the Complaint suggests a plausible conspiracy claim against CT Corporation. *See Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 753 (S.D. Miss. 2002) (requiring plaintiffs to show "(1) the existence of a conspiracy, (2) an overt act in furtherance of that conspiracy, and (3) damages arising therefrom").

Nor would the pleaded "facts" support the statutory claims against CT Corporation. *See* Compl. [1] at 3. At least two of those statutes are criminal and do not apply in this civil case. *See, e.g.*, 18 U.S.C. § 1117 (conspiracy to commit murder); 18 U.S.C. § 1028 (document fraud). And for any remaining civil statutes, the Moores do not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Accordingly, the Court grants CT Corporation's motion to dismiss [16].[4]

---

[4] Even when a party "fail[s] to meet the specific pleading requirements[, that] should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). "Although a court may dismiss [a] claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id.* Here, it is a close call whether to grant this opportunity because nothing in this record suggests facts from which a plausible claim could exist against CT Corporation. Indeed, the Moores appear to have ignored the motion. But because they are proceeding pro se, and out of abundant caution, the Court will give the Moores seven days to move for leave to amend. That motion must attach a proposed amended complaint. *See* L.U. Civ. R. 15. And the proposed amended complaint must include nonconclusory facts showing CT Corporation's alleged wrongdoing. Failure to seek leave to amend will result in CT Corporation's dismissal with prejudice without further notice.

III. Other Motions

The Moores have filed four motions that seem like motions for reconsideration [19, 20, 21, 22], along with several other motions seeking various relief. The Court will address the motions for reconsideration, all of which challenge two interlocutory orders.

Under Federal Rule of Civil Procedure 54(b), interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Thus, interlocutory orders "are left within the plenary power of the court that rendered them to afford such relief from them as justice requires." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)).

A. Motions Related to Show-Cause Order [19, 21]

As discussed, Judge Harris entered a show-cause order [12] directing the Moores to explain why HCCCA should not be dismissed under Rule 4(m) for failure to perfect timely service of process. The Moores responded with two motions. First, they filed what they called "Motion: For Relief, for Order to Show Cause . . . ." Pls.' Mot. [19]. Then, they filed a "Motion: For Satisfactor Proof of Service for Hinds County Chancery Court Administration." Pls.' Mot. [21] (unaltered).

The simple answer for these pro se motions is to liberally construe them as incorrectly docketed responses to the show-cause order. They read that way, and there is no ruling from which relief could be granted. In any event, Judge Harris was correct to enter a show-cause order because the docket did not reflect proper service and Rule 4(m) requires "notice to the plaintiff" before a court may dismiss a complaint for failure to timely serve. Judge Harris gave

the Moores the notice they were entitled to receive. So to the extent that their responses could be viewed as motions seeking relief from his order, then they must be denied.

   B.   Motions Related to Default Judgment [20, 22]

The Moores seek reconsideration of the order [13] denying default judgment. In that order, the Court held that default judgment could not be entered because there was no evidence of service on HCCCA and the proof of service as to CT Corporation mentioned only service of a summons, not a complaint. Order [13] at 3–4. The Court also found that the Moores had neither properly requested nor obtained a clerk's entry of default under Rule 55(a).

In their first motion for reconsideration, the Moores seem to address the clerk's-entry-of-default issue by saying that they called the clerk of court and "told her to entered the Default, on the defendant because it almost past the deadline and the defendant didn't respond." Pls.' Mot. [20] at 1 (unaltered). That alleged phone call was not a proper request for a clerk's entry of default. Under Rule 55(a), the party seeking a clerk's entry of default must show it is proper by "affidavit or otherwise." That didn't happen. Nor does the motion explain why either Defendant was properly served—something that is still unclear. The motion is denied.[5]

The second motion for reconsideration [22] is no better. This document alleges an attempted murder, but it does not explain why the Court's order denying default judgment was

---

[5]The Moores say in later submissions that they properly served HCCCA when they mailed their motion for monetary relief [7] via certified mail on September 15, 2025. *See* Pls.' Mot. [19] at 1; Pls.' Mot. [21] at 1. Serving a motion is different from serving the summons and complaint as Rule 4 requires, and service by certified mail to a governmental entity is not permissible under Rule 4(j) or the incorporated Mississippi Rules of Civil Procedure 4(c)(5) and 4(d). And even if service of process were correct in September 2025, the Court may not grant default judgment unless the party is entitled to relief. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015). Here, it is not apparent that the Moores factually pleaded a plausible claim against HCCCA, which may not even be a legal entity that can sue or be sued. Even if it could be sued, there are questions whether the Eleventh Amendment would preclude suit in this court.

7

incorrect or should be altered or amended. Pls.' Mot. [22] at 1. Perhaps the Moores simply misunderstand the rules and are trying to tell the Court that they deserve relief, but the motion does not demonstrate any error in the order denying default judgment. For these reasons, the motions are denied.

C. Remaining Motions

Among the still-pending motions, the Moores recently filed two [24, 25], claiming to have properly served HCCCA on January 22, 2026. The Court will not now consider whether the Moores have perfected service of process and will instead wait to see whether HCCCA responds. If it does, the Court can decide the issues with full briefing from both sides.

IV. Conclusion

The Court has considered all arguments presented. Any argument not specifically addressed would not affect the outcome. The Court grants CT Corporation's Motion to Dismiss [16] but will allow a motion seeking leave to amend. The Court denies Plaintiffs' motions [19, 20, 21, 22]. All other motions remain pending.

**SO ORDERED AND ADJUDGED** this the 11th day of February, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE